2017 ND 255

**In the MATTER OF a PETITION TO PERMIT TEMPORARY PROVISION OF LEGAL SERVICES by Qualified Attorneys From Outside North Dakota**

No. 20160436

Supreme Court of North Dakota.

Filed 1/18/2017

Per Curiam.

[¶ 1] On December 14, 2016, eight North Dakota licensed lawyers and two lawyers licensed in another state but temporarily licensed in North Dakota filed a petition for an order allowing non-North Dakota licensed lawyers to represent criminal defendants who have been charged as a result of protest activities connected to the Dakota Access Pipeline. The petitioners request that North Dakota's process for admission of lawyers licensed in another state be significantly changed.

[¶ 2] The petitioners allege the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, § 12 of the North Dakota Constitution, require that North Dakota admit out-of-state lawyers in temporary practice to adequately handle criminal charges stemming from protest activities which they claim overwhelm the North Dakota bar's ability to adequately represent all defendants. The petitioners request that this Court amend our Admission to Practice Rules.

[¶ 3] The Court established a comment period ending 4 p.m., Friday, December 30, 2016. We received more than 16,000 comments supporting or opposing the petition. Many comments reviewed in favor of the petition give the impression that out-of-state lawyers are not allowed to practice in this state. Others suggest the number of lawyers admitted to practice law in North Dakota is inadequate to handle all of the criminal cases that have arisen out of the protests of the Dakota Access Pipeline. The bulk of the comments appeared to be generated by social media and commented on the merits of the charges filed, the actions of law enforcement and prosecuting lawyers, the placement of or need for the pipeline or the protests in general. These comments are extraneous and unhelpful to resolving the issues raised in the petition. Also beyond the scope of our consideration is modification of rules regulating the permanent admission and licensure

of those seeking to become North Dakota lawyers.

[¶ 4] This Court regulates the admission, licensing and disciplining of lawyers under authority granted by N.D. Const. art. VI, § 3. This constitutional responsibility is carried out in our rule-making authority. The Court's current rules do not prevent out-of-state licensed lawyers from temporarily practicing law in North Dakota. Rather, lawyers licensed in another state are allowed to practice law in North Dakota by filing a motion with the district court in which a case is pending, attesting to their admission, licensing and discipline information, associating with a lawyer who is licensed in North Dakota and paying an annual fee. N.D. Admission to Practice R. 3(A). While the North Dakota lawyer's name must be included on all pleadings, that lawyer's in-person appearance can be excused by the district judge presiding in the matter. This pro hac vice process under Rule 3(A) of the Admission to Practice Rules is available now and is regularly used by many clients and lawyers in both criminal and civil cases.

[¶ 5] North Dakota also allows for full admission by application of experienced lawyers. See N.D. Admission to Practice R. 7. We are among the first states allowing out-of-state lawyers to temporarily practice law in North Dakota while their application for full admission is pending. See N.D. Admission to Practice R. 6.1. Two out-of-state lawyers who signed the petition pending before this Court are right now authorized to practice law in North Dakota under this rule. That is a privilege their resident state of licensure does not grant to North Dakota's or other states' lawyers.

[¶ 6] Rule 3.1 of the Admission to Practice Rules also authorizes the practice of law in civil matters for lawyers volunteering with approved legal services organiza-tions. Rule 3.2 of the Admission to Practice Rules authorizes the provision of legal services following a determination of a major disaster. These rules, as well as Rule 3 of the Admission to Practice Rules, were reviewed for guidance in light of the petition and the comments received.

[¶ 7] The petitioners question North Dakota's requirement that lawyers not licensed in North Dakota who seek pro hac vice admission associate with a licensed North Dakota lawyer. Requiring an associate lawyer in the state where a case is venued is common throughout the United States. See COMPARISON OF ABA MODEL RULE FOR PRO HAC VICE ADMISSION WITH STATE VERSIONS, available at http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/prohac_admin_comp.authcheckdam.pdf (last visited Jan. 12, 2017). Requiring an associate lawyer is an important and legitimate state interest to protect the public from unlicensed lawyers who often are unfamiliar with state-specific court rules, procedures and laws.

[¶ 8] The petitioners and many comments suggest an emergency exists which requires amending North Dakota's rules to allow a pro hac vice application and temporary admission process similar to the United States District Court for the District of North Dakota. They suggest that, among other things, the federal process does not require an associate lawyer, and that eliminating the need for an associate lawyer will alleviate the perceived shortage of criminal defense counsel. The federal courts do not require an associate lawyer for a number of reasons, including that the same federal rules of procedure apply nationwide and the cases usually are decided according to federal law. The same cannot be said of our state rules, statutes and judicial rulings.

[¶ 9] We further reject as unsupported by evidence the suggestion that the South Central Judicial District is not currently handling the protest-related criminal cases in a timely manner due to unavailability of counsel. We have been provided with no evidence that a specific defendant has been denied counsel due to the unavailability of criminal defense or pro hac vice associate lawyers licensed in North Dakota. To the contrary, comments received in this process from the North Dakota Commission on Legal Counsel for Indigents state that lawyers have been assigned in "all cases in which someone has been found eligible to have indigent defense services provided by the Commission." The Commission provided the following information:

- 553 court cases were filed in district court in the South Central Judicial District resulting from Dakota Access Pipeline protests as of December 19, 2016;

- The Commission made 291 case assignments, constituting approximately 53 percent of the protest-related court cases;

- The Commission assigned an attorney in all cases in which a defendant is eligible to receive indigent defense services;

- The Commission has made case assignments to 81 attorneys;

- The 81 assigned attorneys are from commission offices throughout North Dakota, from contract lawyers throughout North Dakota, and from "45 hourly/conflict contractors from other districts [in North Dakota] and NW Minnesota;" and

- A large number of arrests and charges occurred on single days. Those circumstances required assignment of different counsel for each defendant. For one of those days, 71 different attorneys were needed and assignments have been made.

Review of our case management system records shows that the Indigent Defense Commission has continued from mid-December to make indigent defense case assignments. The South Central Judicial District's comment filed in this matter states that all qualifying protest-related indigent defendants have been provided counsel.

[¶ 10] The petition can be read as requesting, and some filing comments have suggested, that this Court utilize provisions of N.D. Sup. Ct. Admin. R. 57 and declare a judicial emergency. By its terms, that rule was adopted to address "an emergency or natural disaster [that] substantially endangers or infringes upon the normal functioning of the judicial system, the ability of persons to avail themselves of the judicial system, the ability of litigants or others to have access to the courts, or to meet schedules or deadlines imposed by court order or rule, statute, or administrative rule." Id. at § 1. We are not willing to categorize the protests of the Dakota Access Pipeline and charges stemming from them as either a natural disaster or a judicial emergency. Normal judicial processes and the requested deficiency appropriations for the North Dakota Judicial System and the North Dakota Commission on Legal Counsel for Indigents are expected to protect each criminal defendant's constitutional rights. We nevertheless recognize the potential for delay or inconvenience for litigants due to the relatively large number of arrests and finite resources to handle the judicial proceedings related to those arrests.

[¶ 11] Due to the significant increased caseload of the South Central Judicial District as a result of criminal charges stemming from the pipeline protests, a surrogate judge has been assigned to the district to assist the workload. Due to this

same increased caseload, this Court in its discretion will allow temporary streamlining of our procedures for temporary admission of lawyers to provide pro bono services.

[¶ 12] In criminal cases pending in the South Central Judicial District arising from arrests made during the protests of the Dakota Access Pipeline between August 1, 2016 and until further order of this Court, a lawyer authorized to practice law in another state, and not disbarred, suspended or otherwise restricted from practice in any jurisdiction, may provide legal services in North Dakota on a temporary basis. The legal services must be provided on a pro bono basis, without payment or the expectation of payment of a fee. This Order does not prohibit a lawyer providing legal services under authority of this Order from being reimbursed from non-governmental funds for actual expenses incurred while rendering services under this Order. The following requirements, processes and procedures shall apply:

1) The lawyer seeking pro hac vice admission must complete a form available through the Clerk of the Supreme Court and file it with the North Dakota State Board of Law Examiners;

2) The lawyer seeking pro hac vice admission must file the above-referenced form with a certificate from his or her resident state licensing authority certifying the lawyer is admitted, currently licensed, eligible to practice and in good standing;

3) The lawyer seeking pro hac vice admission must associate with a licensed North Dakota lawyer as required under N.D. Admission Prac. R. 3. We excuse the requirement that the North Dakota associate lawyer appear in-person and remain in court for all proceedings unless the district judge presiding in the case enters an order, based on a case-specific reason, requiring the presence of the North Dakota associate lawyer;

4) The pro hac vice filing fee is waived;

5) Upon receipt of the completed form and required materials, the North Dakota State Board of Law Examiners will provide the lawyer seeking pro hac vice admission an identification number that must be included on all pleadings filed with any court regarding these matters;

6) Each business day the Clerk of the Supreme Court shall provide the Court Administrator for the South Central Judicial District with a listing of all lawyers who have been granted pro hac vice admission as provided in this Order;

7) Lawyers admitted pro hac vice must access the North Dakota Odyssey electronic case management system through the associate lawyer unless the associate lawyer does not subscribe to North Dakota's Odyssey case management system. If the associate lawyer does not subscribe to Odyssey case management system, the lawyer admitted pro hac vice may e-mail filings to the clerk of court;

8) The lawyer admitted pro hac vice under this Order is not by virtue of that admission limited in the number of appearances or representations he or she can make regarding these matters;

9) The lawyer admitted pro hac vice under this Order must remain licensed and in good standing in the lawyer's state of licensure, and must verify in writing to the North Dakota State Board of Law Examiners no later than January 5, 2018, their

licensure status and provide a listing of pending cases for which they are acting under this Order; and

10) Any allegations of misconduct by a lawyer admitted pro hac vice under this Order that is reported to the Disciplinary Board of North Dakota will be provided to the lawyer's state of licensure, and may be grounds for revocation of pro hac vice admission under this Order.

[¶ 13] We encourage the State Bar Association of North Dakota, the North Dakota Association for Justice and Legal Services of North Dakota to assist in locating North Dakota licensed lawyers to serve as associate lawyers.

[¶ 14] Any other remedies requested by the petitioners are denied at this time.

[¶ 15] This Order remains in effect until further order of the Court.

[¶ 16] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte